**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CR-20343-KMW(s)**

**UNITED STATES OF AMERICA**

**v.**

**ROGER ALEJANDRO PIÑATE MARTINEZ,**

**Defendant.**
________________________________________/

**OPPOSITION TO RENEWED MOTION FOR A BILL OF PARTICULARS**

The United States opposes the renewed motion for particulars filed by defendant Piñate (DE 515) and adopted by defendants SGO Corporation Limited ("SGO") (DE 516) and Vasquez (DE 517) (collectively, "the defendants"). This case is about the defendants' million-dollar payment to a corporate entity owned or controlled by defendant Andy Bautista while he chaired the Philippine elections commission (COMELEC). *See* DE 256 at 3; DE 264 at 23. The initial Indictment and Superseding Indictment allege that the defendants made the payments to release tens of millions of dollars in value added tax ("VAT") payments and contractual milestone payments. *See* DE 12 at 9; DE 264 at 9. Following defendant Piñate's first motion for particulars, the Court held in a 21-page Order that the charges were sufficiently precise to prepare a defense. *See* DE 68. This latest motion is untimely and should be denied on that basis because the defendants failed to object to the previous Order under Fed. R. Crim. P. 59(a) or move within 14 days of arraignment on the Superseding Indictment under Rule 7(f). On the merits, the motion consists of premature evidentiary arguments and confusion about the elements of the charges, none of which calls into question the Court's prior analysis. The Superseding Indictment and associated discovery more than sufficiently apprise the defendants of the charges under Rule 7(c). The motion should be denied.

## BACKGROUND

### A. Initial Indictment and First Motion for Particulars.

On August 9, 2024, a grand jury returned a six-count Indictment charging defendants Piñate, Vasquez, Bautista, and Moreno with a bribery and money laundering scheme relating to voting machine contracts for the 2016 Philippine elections. The Indictment charged six counts: Conspiracy to Violate the Foreign Corrupt Practices Act (FCPA) (Count 1), a substantive violation of the FCPA (Count 2), Conspiracy to Commit Money Laundering (Count 3), and International Laundering of Monetary Instruments (Counts 4–6). DE 12. The Indictment alleged that the defendants bribed defendant Bautista "in order to obtain and retain contracts with, and receive payment – including releases of value added tax ("VAT") payments – from COMELEC." DE 12 at 9.

On October 8, 2024, defendant Piñate filed a motion for particulars, which was adopted by defendant Vasquez. DE 53, 55. The Court denied the motion, finding that the Indictment was "sufficiently specific and the Government ha[d] also fulfilled its legal obligations by providing information through other sources, including discovery." DE 68 at 2.

### B. Superseding Indictment and Renewed Motion for Particulars.

On October 16, 2025, a grand jury returned a Superseding Indictment charging the previously charged individuals and SGO, also known as "Smartmatic," with the same six counts and the same bribery and money laundering scheme alleged in the original Indictment. DE 264.[1] The Superseding Indictment alleged that the defendants bribed defendant Bautista "in order to obtain and retain business from COMELEC, including the release of favorable value added tax ("VAT")

[1] While unrelated to the instant motion, following the Superseding Indictment, the government provided SGO with particulars relating to the conduct giving rise to venue in the Southern District of Florida and the conduct attributable to SGO. *See* DE 409-1, DE 410, and DE 431.

payments and contractual payments." DE 264 at 9. In May 2026, the government confirmed for the Court that the Superseding Indictment does not allege a "business nexus" involving the initial procurement of the contracts. *See* May 6, 2026 Hr'g Tr. at 67:15-19.[2] On October 28, 2026, defendant Piñate again moved for particulars relating to the release of VAT and milestone payments, as well as so-called "official acts" by defendant Bautista.

**C. Favorable VAT treatment.**

The defendants seek particulars relating to "what made the VAT treatment 'favorable,' and each VAT release Bautista allegedly expedited or was paid not to delay." DE 515 at 12. As described in the government's response to the defendants' motion to dismiss for failure to state a "business nexus," DE 381, the Superseding Indictment contains specific allegations that the defendants paid the bribe to assist in obtaining "favorable" VAT treatment.

According to the Superseding Indictment, the defendants planned corrupt payments to defendant Bautista, the COMELEC official with decision-making authority to release payments under the contracts. DE 264 at 12, ¶ 3. On May 15, 2016, the defendants "creat[ed]" the first fake contract to paper over the bribe transfers. DE 264 at 12, ¶ 5. "On or about July 29, 2016, **ELIE MORENO**, on behalf of SMMT-TIM 2016, sent **JUAN ANDRES DONATO BAUTISTA**, in his capacity as COMELEC Chairman, a letter requesting that **BAUTISTA** use his "'good office to approve the release of our outstanding collectible totaling Php 3.3 Billion (inclusive of 12% VAT)' (approximately $70,132,635.69 in U.S. dollars)." DE 264 at 13, ¶ 11.

On August 10, 2016, "**ROGER ALEJANDRO PINATE MARTINEZ**, later messaged, in

[2] The defendants separately moved to dismiss Counts 1 and 2 for failure to allege an FCPA "business nexus." DE 369, 381, 388. Courts have emphasized that the FCPA is not limited to contract procurement, but covers bribes paid to reduce taxes and release contractual payments. DE 381 at 6.

Spanish, via WhatsApp to **JORGE MIGUEL VASQUEZ**, informing him that" there was still no resolution to the outstanding VAT calculation and milestone payments being withheld by COMELEC: "[I]t seems that we are close to achieving the goal of collecting, and in addition collecting much more than what was hoped for through a tax strategy, we are close." DE 264 at 14, ¶ 15. Five days later, according to the Superseding Indictment, defendant Bautista authorized lowering the VAT from 12% to 5% and authorized the release of more than $4 million in payments to Smartmatic. DE 264 at 14, ¶ 17.

That same day, August 15, 2016, defendants Piñate and Vasquez, while in the Southern District of Florida, initiated, directed, and effectuated $1 million in bribery transfers to defendant Bautista. DE 264 at 14-15, ¶¶ 17-19. Particularly,

> On or about August 15, 2016, several days after **JUAN ANDRES DONATO BAUTISTA** approved the payment of 195,663,660.99 Philippine pesos (approximately $4,208,454.20 in U.S. dollars) to SMMT-TIM 2016 relating to a release of VAT *withheld* from Contract 2, **ROGER ALEJANDRO PINATE MARTINEZ**, while in the Southern District of Florida, sent **JORGE MIGUEL VASQUEZ** a WhatsApp message, in Spanish, that "Elie [**MORENO**] sends you the instructions but they already started paying us so we can immediately execute the *loan*."

DE 264 at 14, ¶ 17 (italics added). The Superseding Indictment details the dates of the wire transfers to Chairman Bautista, the amounts of the transfers, the bank accounts used to funnel more than a million dollars to a foreign government official, and the steps taken by the defendants to conceal the bribe by "dividing [it] into two payments" to avoid "set[ting] off alarm bells" "because it was a lot of 'salsa' to send to the 'north,'" a reference to the United States. DE 264 at 15-16.

While this Court held that "the [g]overnment has no duty to isolate the particular items or documents that are relevant to each count of an indictment," DE 68 at 20 (citation omitted), the government has provided the following particularized discovery relating to the alleged favorable VAT treatment:

- a memorandum by COMELEC Director Maria Alarkon, dated October 15, 2015. DOJ-HK-1-0000487932;

- a memorandum, dated October 21, 2015, from defendant Moreno, Smartmatic's project director, to COMELEC Commissioner Robert Lim, "request[ing] payment for the retained 12% VAT." DOJ-MLAT-0000013181;

- a memorandum from COMELEC Commissioner Robert Lim to Chairman Bautista, dated October 22, 2015, apologizing for approving the retention of a 12% VAT and requesting Chairman Bautista's assistance in releasing the retained VAT to Smartmatic. DOJ-MLAT-0000013689;

- a legal opinion by COMELEC Attorney Arnel P. Bacarra, dated May 5, 2016, recommending that "COMELEC should maintain its initial stand to deduct 12% VAT from the contract price." DOJ-SW-2-0000357807;

- a memorandum from COMELEC Commissioner Robert Lim to Chairman Bautista, dated May 11, 2016, "deem[ing] it necessary to defer the signing of vouchers and processing of payments in favor of SMMT-TIM 2016, Inc., in relation to the various contacts . . . by reason of the differences of interpretation in the computation of the VAT." DOJ-MLAT-0000013517;

- a legal opinion by COMELEC Chief Attorney Maria Norina S. Tangaro-Casingal to Chairman Bautista, dated July 21, 2016, recommending the denial of Smartmatic's claimed entitlement to a 7% VAT and to "continue deducting the entire 12% VAT." DOJ-MLAT-0000013419;

- a letter from defendant Moreno on behalf of Smartmatic to Chairman Bautista "humbly appeal[ing] to your good office to approve the payment release of our outstanding collectible totaling Php3.3 Billion (inclusive of 12% VAT)." DOJ-SW-2-0000357795 (*see* DE 264 at 13, ¶ 11); and

- minutes from the Special En Banc Meeting of the COMELEC Commission held on August 11, 2016, approving the release of a previously withheld 7% VAT. DOJ-HK-2-0000552990.

**D. Release of milestone payments.**

The defendants further request "each milestone payment allegedly delayed, withheld, or expedited, identified by contract, milestone, and approximate date." DE 515 at 12. The Superseding Indictment specifically alleges that the defendants paid the bribe to assist in the release of milestone

payments on the relevant contracts.

- COMELEC agreed to pay the total contract value of approximately $182 million to Smartmatic entities "in installments" upon "meeting milestones . . . only when **BAUTISTA** or his designee certified" that the relevant Smartmatic entity "reached a milestone." DE 264 at 6.

- Once these "payments [were] received from COMELEC," "**PINATE** sent **VASQUEZ** a WhatsApp message" with "the instruction to immediately execute a loan that would be used to facilitate a payment for the benefit of **JUAN ANDRES DONATO BAUTISTA** in furtherance of the illegal bribery scheme." DE 264 at 20.

As the defendants acknowledge, the discovery materials include "thousands of pages of supporting documentation" relating to "25 milestones stretching from August 2015 to March 2017." DE 515 at 2. Those discovery materials include:

- COMELEC's policy memorandum setting forth Chairman Bautista's signatory authority for payments over Php 1,000,0000. DOJ-MLAT-0000001854;

- the relevant COMELEC contracts governing the release of milestone payments, including provisions in all three contracts to the effect that "[n]o payment, partial or final, shall be made except upon a certificate of acceptance issued by the COMELEC Chairman or the designated authorized signatory to the effect that the Goods and Services have been Accepted in accordance with this Contract." DOJ-MLAT-0000001068, DOJ-MLAT-0000000321, DOJ-MLAT-0000000001;

- certificates of acceptance for milestone payments, signed and authorized by Chairman Bautista. DOJ-MLAT-0000001870-72, DOJ-MLAT-0000001908-17, DOJ-HK-2-0000294350, DOJ-HK-2-0000294360;

- disbursement vouchers for milestone payments, signed and approved for payment by Chairman Bautista. DOJ-MLAT-0000000162-320, DOJ-HK-2-0000294355-56, DOJ-HK-2-0000294347;

- Chairman Bautista's letters to Land Bank signing and approving for payment disbursement vouchers for "Milestones 1-3" of the 71,000 and 23,000 voting machine unit contracts. DOJ-HK-2-0000549725-32, DOJ-HK-3-0000545997-6000, DOJ-HK-3-0000546135-39; and

- an August 12, 2016 billing statement issued from Smartmatic to COMELEC in the amount of Php 380,210,243.84 for remaining portions of Milestones 1-8 on the 71,000 voting machine unit contract. DOJ-HK-2-0000557987.

With the government's assistance, the defendants have conducted five Rule 15 depositions in the Philippines, including a deposition of the director of the Philippine Bureau of Internal Revenue (BIR) and four witnesses from COMELEC, who according to the defendants further "established the contours of the milestone approval process." DE 515 at 11. All of the documents bulleted above were marked as exhibits by the government or defense in connection with the Rule 15 depositions.

## LEGAL STANDARD

Under Rule 7, "[t]he court may direct the government to file a bill of particulars," but the decision "rests within the sound discretion of the trial court." *United States v. Draine*, 811 F.2d 1419, 1421 (11th Cir. 1987). There are three proper purposes of a bill of particulars: (1) to inform the defendant of the charges with sufficient precision to allow him to prepare his defense, (2) to minimize surprise at trial, and (3) to enable him to plead double jeopardy in a later prosecution for the same offense. *See United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986). "An indictment satisfies these requirements as long as the language therein sets forth the essential elements of the crime." *United States v. Cole*, 755 F.2d 748, 759 (11th Cir. 1985). Denial of a motion for particulars "can be reversed only when it is established that the defendant was actually surprised at trial and thus incurred prejudice to his substantial rights." *Draine*, 811 F.2d at 1421.

Courts should only require particulars "to supplement an inadequate indictment." *United States v. Velez*, No. 05-cr-20770, 2008 WL 11454752, at *2 (S.D. Fla. July 11, 2008). "[A] bill of particulars is not required where the information sought has already been provided by other sources, such as the indictment and discovery, and it is not designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." *United States v. Roberts*, 174 F. App'x 475, 477 (11th Cir. 2006) (citations omitted).

"[G]eneralized discovery is not a proper purpose in seeking a bill of particulars." *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981); *see United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant, or disclose its legal theory."); *United States v. York*, No. 16-cr-00069, 2017 WL 3581711, at *1 (E.D. Cal. Aug. 18, 2017) ("A bill of particulars is not to be used as a discovery device, with a defendant interrogating the government as to the precise details of every alleged act—the who, what, and where of every allegation.") (citing *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir. 1979)). While a defendant is entitled to know the theory of the government's case, he "is not entitled to know all the [e]vidence the government intends to produce." *Giese*, 597 F.2d at 1181.

## ARGUMENT

### I. THE SUPERSEDING INDICTMENT AND DISCOVERY SUFFICIENTLY APPRISE THE DEFENDANTS OF THE CHARGES.

The Superseding Indictment and discovery materials go well beyond the required "plain, concise, and definite . . . statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). As detailed above, the Superseding Indictment alleges specific business nexuses of favorable VAT treatment and release of contractual milestone payments. *See supra* pp. 3-7. The government has provided detailed descriptions of the "business nexus"-related discovery with associated Bates numbers. *Id.*

This Court has addressed the sufficiency of the "business nexus" allegations because the initial Indictment and Superseding Indictment both alleged an FCPA "business nexus" involving release of contractual payments and VAT. DE 12 at 9; DE 264 at 9. The defendants omit key

portions of the "business nexus" addressed in Magistrate Judge Goodman's Order. *See* DE 515 at 3 ("Judge Goodman relied on the notion that the object of the alleged bribery scheme was 'to obtain and retain contracts with, and receive payment . . . from COMELEC . . . and direct business to' various Smartmatic entities."). Filling in the portions elided by the defendants, the complete charging language found sufficient by the Court included "receiv[ing] payment – including releases of VAT payments – from COMELEC." DE 68 at 5, 10, 15, 16-17.

The Court further cited the government's itemized discovery productions, DE 68 at 2-3, which have been supplemented with the identification by Bates stamp of milestone and VAT-related materials. While it remains unclear how the government's decision not to pursue a contract procurement theory would entitle the defendants to additional information, the defendants' continued claims that there is any mystery about the business the bribe payments were meant to "obtain or retain" are without merit. Rather than a proper request for particulars, the defendants raise premature evidentiary arguments about whether they were entitled to the VAT and milestone payments, arguments that do not speak to the adequacy of the charges as the Court has signaled. *See* May 6, 2026 Hr'g Tr. at 69:12-15 ("So [the government's] response would be, that's well and good for the defendants to endeavor to bring to the attention of a jury, if appropriately, but it does not affect whether the Government has alleged appropriately [the] FCPA in Counts 1 and 2."). Finally, nothing in the September 2026 hearing transcript attached to the defendant's motion suggests that the charges are somehow deficient.

## II. THE FCPA DOES NOT REQUIRE PROOF OF AN "OFFICIAL ACT" BY A FOREIGN OFFICIAL.

In his first motion for a bill of particulars, defendant Piñate sought defendant Bautista's "official acts, decisions, omissions in violation of lawful duties, or uses of influence . . . in

consideration for a corrupt act." DE 53 at 1. The Court noted that defendant Piñate:

> seeks to compel the Government to disclose: "the official acts, decisions, omissions, or uses of influence he is accused of corrupting; the corrupt acts he allegedly undertook to influence those actions; and the transactions the [G]overnment alleges underlie the charged money laundering conspiracy." But, as discussed in more detail below, the Indictment, supplemented by the Government's discovery responses and other disclosures, fulfills the Government's Rule 7(c) obligations, permits Defendants to prepare a defense, and allays any future double jeopardy concerns.

DE 68 at 13-14 (citations omitted). The defendant's latest motion similarly seeks "the official act or decision the alleged bribes were meant to influence, and whether he acted personally, through a designee, or by influencing other officials," DE 515 at 5, and should be denied for the same reasons.

The request for "official acts" remains an improper subject of particulars in a case involving the FCPA, which contains no such element. The FCPA requires a payment (or offer, promise, or authorization of a payment) for any one of four corrupt purposes.[3] In addition to this Court's denial of a nearly identical request, other courts have denied requests in FCPA cases for "the official acts alleged to have been taken by" the foreign official who received bribes. *United States v. Seng*, No. 15-cr-706, 2017 WL 11917406, at *4 (S.D.N.Y. Apr. 26, 2017). In *Seng*, the court held that the charging documents, search warrant affidavits, and discovery materials "adequately inform[ed] [the defendant] of the charges against him to enable him to 'prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" *Id.* (quoting *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)). Very recently, another district court denied a motion for particulars requesting the same information. *United States v.*

[3] The purposes include (i) to influence any act or decision of a foreign official in his official capacity; (ii) to induce such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official; (iii) to secure any improper advantage; or (iv) to induce such a foreign official to use his influence with a foreign government to affect and influence acts and decisions of such government. *See* 15 U.S.C. §§ 78dd-2, 78dd-3.

*Ferrera*, No. 26-cr-30 (C.D. Cal. Aug. 31, 2026) (ECF No. 106).

Tellingly, the defendants do not cite any FCPA cases to support their request, but resort to cases interpreting bribery or gratuities statutes, where unlike the FCPA, an official act is an essential element. *See* DE 515 at 8 (citing *United States v. Siddiqi*, No. 06-cr-377, 2007 WL 549420, at *4 (S.D.N.Y. Feb. 21, 2007) (interpreting 18 U.S.C. § 666) and *United States v. Espy*, 989 F. Supp. 17, 22 (D.D.C. 1997) (interpreting 18 U.S.C. § 201(c)). Those cases have no bearing on the elements of the charges in this case. Courts have uniformly declined to read elements of bribery and gratuities statutes into the FCPA. *See, e.g.*, Report and Recommendation of United States Magistrate Judge Lisette M. Reid in *United States v. Wakil*, No. 21-cr-20406, 2023 WL 2898510, at *5 (S.D. Fla. 2023) (DE 94), report and recommendation adopted by United States District Judge Kathleen M. Williams (DE 100). Because the FCPA does not require the government to prove an "official act" by a foreign official, *see Seng*, 934 F.3d at 134, the Court should not order the government to particularize conduct it is not required to prove.

**CONCLUSION**

The defendants have been provided the requisite facts constituting the offenses charged and have been sufficiently apprised of the allegations, well beyond what is necessary to prepare a defense and prevent unfair surprise at trial. The Court should deny the motion.

Respectfully submitted,

| | |
|---|---|
| LORINDA I. LARYEA<br>Chief | YARA LORENZO KLUKAS<br>Acting United States Attorney |
| */s/ Connor Mullin*<br>CONNOR MULLIN (A5503233)<br>PATRICK BROWN (A5503352)<br>Trial Attorneys | */s/ Robert J. Emery*<br>ROBERT J. EMERY<br>Assistant U.S. Attorney<br>Southern District of Florida |

U.S. Department of Justice
White Collar and Corporate
Enforcement Section
1400 New York Avenue NW
Washington, DC 20530
Tel: (202) 993-4828
Connor.Mullin2@usdoj.gov
Patrick.Brown4@usdoj.gov

Court ID No. A5501892
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9421
Robert.Emery2@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF on November 12, 2026, and therefore served on all counsel of record.

/s/ *Connor Mullin*
Connor Mullin
Trial Attorney